Nott, J.,
delivered the opinion of the court:
Dr. Charles Taylor, of the Second Yirginia Regiment, in the Continental service, was one of the reduced officers or supernumeraries referred to in the Resolution 21 st October, 1780 (Jour., vol, iii, p. 53S), of the Continental Congress, and as such would have been entitled to half-pay for fife, subject to a commutation of five years’ full pay, subsequently provided for, by the Resolution 22d March, 1783 (Jour., vol. iv, p. 178). But while Dr. Taylor'was thus out of the service as a supernumerary, the Con *400 tinental Congress, on- the 9th January, 1779 (Jour., vol. iii, p. 179.)
“Resolved, That a battalion, consisting of 600 men, properly officered, be forthwith raised, on Continental establishment, in Virginia, for the space of one year from the time of their enlistment, unless sooner discharged, under the direction of the governor and council of that State, who are hereby empowered to appoint the officers of the said battalion out of those of the Virginia line who have been left out of the late arrangement of the Continental Army, as far as their numbers will reachP
Dr. Taylor accepted an appointment in this regiment as surgeon’s mate — the same rank he held as supernumerary — and was promoted later to be surgeon, and held the office of surgeon until the regiment was mustered out or discharged from the Continental service. As an officer of this regiment, Dr. Taylor never became entitled to half-pay or commutation, inasmuch as it did not “ continue in the service to the end of the war,” and the only question in the case is whether he became again a supernumerary when discharged with his regiment.
It is manifest that the Continental Congress regarded reduction to a supernumerary as in one sense degradation, and intended the half-pay for life as compensation for the loss of full pay during the war with the consequent chances of promotion. It is also manifest that they regarded an appointment in the regiment of guards as preferment, and a means for relieving an officer from the loss and mortification of being a supernumerary. Certainly it cannot be pretended that the Congress considered these things as cumulative, and intended that a person should at the same time draw full pay as an officer in the guards and half-pay as a supernumerary. It also seems indisputable that if the guards had remained in service till the end of the war, Dr. Taylorwouldhavebeenentitledtohalf-payforlife as surgeon, and would not have been relegated to his former position of supernumerary surgeon’s mate; and yet again it seems equally clear thathe would nothavebeen entitled to retire atthe end of the war with half-pay as surgeon and likewise with half-pay as a supernumerary surgeon’s mate.
To sum up the matter in few words, there is no reason for supposing that the Continental Congress intended these positions to be cumulative, nor that they intended that an officer should have the advantages of full pay and promotion in the *401 guards and tlien resume tbe compensation intended for those who liad been deprived of them. It is impossible to hold that the same man was at the same time both an officer in service and a supernumerary out of service. There was no compulsion in serving in the guards; no one knew that the service might not continue to the end of the war; the officer had his option of accepting the preferment or of .retaining his position as supernumerary; but by accepting the one he resigned the other. We have no doubt that this was well understood at the time, and that it accounts for these officers never having presented claims for pay as supernumeraries.
The judgment of the court is that the petition be dismissed.